# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DAVID MUTNICK, for himself and others
similarly situated,

     Plaintiffs,

     v.

CLEARVIEW AI, INC., et al.,

     Defendants.

Case No. 20 C 0512

Judge Sharon Johnson Coleman

ANTHONY HALL, on behalf of himself
and others similarly situated,

     Plaintiffs,

     v.

CLEARVIEW AI, INC.,

     Defendant.

Case No. 20 C 0846

Judge Sharon Johnson Coleman

## MEMORANDUM OPINION AND ORDER

Defendants Clearview AI, Inc. ("Clearview"), Hoan Ton-That, and Richard Schwartz move to dismiss the present lawsuits under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. In the alternative, defendants seek to transfer venue to the Southern District of New York under 28 U.S.C. § 1404(a). For the following reasons, the Court denies defendants' motions.

## BACKGROUND

In January and February 2020, plaintiffs brought the present lawsuits alleging that defendants scraped over three billion facial images from the internet and scanned the facial images' biometric identifiers and information. Thereafter, defendants built a searchable database of the scanned images enabling database users to instantly identify unknown individuals using nothing more than a photograph. In addition to photographs, the database includes personal and private

data, including names, home addresses, and work addresses. Defendants have sold access to their facial recognition database to Illinois law enforcement and government agencies, as well as federal law enforcement agencies located in Illinois.

Plaintiffs bring putative class actions under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), a consumer privacy statute, alleging defendants' conduct violated their privacy rights and that defendants' use of their biometric information was without their knowledge and consent. On May 28, 2020, the American Civil Liberties Union ("ACLU") and other plaintiffs brought a similar lawsuit against defendant Clearview for BIPA violations in the Circuit Court of Cook County alleging that through Clearview's facial recognition database, an entity "can instantaneously identify the subject of a photograph with unprecedent accuracy, enabling covert and remote surveillance of Americans on a mass scale."

**Legal Standard**

A motion to dismiss under Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2); *Curry v. Revolution Labs., LLC,* 949 F.3d 385, 392 (7th Cir. 2020). Although plaintiffs bear the burden of establishing personal jurisdiction, when ruling on a Rule 12(b)(2) motion to dismiss based on the submission of written materials, plaintiffs need only make a prima facie showing of personal jurisdiction. *Id.*; *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). When the parties submit affidavits concerning personal jurisdiction, the district court may weigh the affidavits when evaluating whether plaintiffs have established their prima facie case. *Curry*, 949 F.3d at 393. If there is a factual conflict between the record and defendants' affidavits, courts resolve the conflict in plaintiffs' favor. *Id.* In addition, when analyzing a Rule 12(b)(2) motion without conducting an evidentiary hearing, courts accept the well-pleaded, undisputed facts in the complaint as true. *Matlin*, 921 F.3d at 705.

## Discussion

*Personal Jurisdiction*

The Court's jurisdiction over plaintiffs' state law BIPA claims is circumscribed by both

Illinois law and federal due process. *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.,* 965 F.3d 571, 575

(7th Cir. 2020). It is well-settled that "the Illinois long-arm statute permits the exercise of

jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause," thus

the Court's inquiry is whether the exercise of personal jurisdiction over the defendants comports

with federal due process. *Curry*, 949 F.3d at 393 (citation omitted). There are two types of personal

jurisdiction – general and specific. *J.S.T. Corp.,* 965 F.3d at 575. Here, plaintiffs have established

specific jurisdiction over all of the defendants.

To show specific personal jurisdiction, the defendants' contacts with the forum state must

be directly related to the challenged conduct. *Curry*, 949 F.3d at 395; *Matlin*, 921 F.3d at 705. In

short, the Court's inquiry focuses on the "relationship among the defendant, the forum, and the

litigation." *Walden v. Fiore*, 571 U.S. 277, 284, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014). There are

three "essential requirements" to establish specific personal jurisdiction: (1) defendants must have

purposefully availed themselves of the privilege to conduct business in the forum state or

purposefully directed their activities at the state; (2) plaintiffs' injuries resulted from the defendants'

forum-related activities; and (3) the federal court's exercise of jurisdiction comports with traditional

notions of fair play and substantial justice. *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.,* 938 F.3d 874, 878

(7th Cir. 2019).

Examining the evidence, allegations, and averments presented by the parties, individual

defendants Ton-That and Schwartz founded Clearview in 2017. Ton-That and Schwartz have high-

ranking positions in management and operations at Clearview. More specifically, Ton-That is

Clearview's CEO and is responsible for managing Clearview's technological matters. Schwartz is

Clearview's president managing Clearview's sales. Schwartz and Ton-That have contributed significant resources to Clearview's operations. Schwartz, for example, has paid for the servers and other costs necessary to carry out Clearview's scraping and scanning operations.

As Clearview's principals, Schwartz and Ton-That have executed hundreds of agreements on behalf of Clearview with numerous Illinois law enforcement and other government agencies, as well as private entities in Illinois, to provide access to its facial recognition database. Through these agreements, defendants have sold, disclosed, obtained, and profited from the biometric identifiers of Illinois citizens. Some of the entities to whom Clearview sold biometric information include the Chicago, Rockford, and Naperville police departments. Also, Clearview marketed its licenses (user accounts) for its facial recognition database to the Illinois Secretary of State and negotiated a contract with the Secretary of State via a series of emails, mail, and phone calls. As to Clearview's price quote to the Secretary of State, set forth in a letter dated October 1, 2019, Clearview directed payments to be sent to Clearview AI/Attn: Richard Schwartz at Schwartz's residence in New York City.

Plaintiffs further maintain that defendants purposely directed their "illegal harvesting" operation at the State of Illinois. To clarify, the images contained in the facial recognition databases sold to Illinois entities were uploaded and created using internet-based platforms and websites from companies in Illinois or companies who operate servers in Illinois. Simply put, defendants took biometric information from Illinois residents, created a surveillance database, and then marketed and sold licenses to use this database to entities in Illinois. As a result, plaintiffs' privacy rights were violated.

Despite the evidence, allegations, and averments that defendants purposefully directed their activities to the State of Illinois and that plaintiffs' alleged injuries resulted from these purposeful contacts, the Clearview defendants argue that there is no personal jurisdiction because they have

4

submitted sworn declarations that they never targeted businesses in Illinois and never travelled to Illinois. Defendants' argument is untenable for several reasons, including that under established Seventh Circuit precedent, if there is a factual conflict between the record and defendants' affidavits – as is the case here – courts resolve the conflict in plaintiff's favor. *Curry*, 949 F.3d at 393. And, as the Supreme Court explained over 35 years ago, "[i]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In other words, "physical presence is not necessary for a defendant to have sufficient minimum contacts with a forum state." *Curry*, 949 F.3d at 398.

Defendants' other arguments are equally without merit. For instance, that Clearview also obtained biometric information from millions of other Americans and marketed and sold its database in other states does not save the day. *Curry*, 949 F.3d at 399 ("There is no per se requirement that the defendant especially target the forum in its business activity; it is sufficient that the defendant reasonably could foresee that its product would be sold in the forum."). Simply put, it is not necessary that Clearview exclusively targeted only Illinois' residents and then marketed and sold its database only to Illinois entities. *See, e.g., Norberg v. Shutterfly, Inc.*, 152 F.Supp.3d 1103, 1105 (N.D. Ill. 2015) (Norgle, J.).

Clearview's management, Ton-That and Schwartz, argue that they cannot be subject to personal jurisdiction based on the company's contacts with Illinois. It appears that defendants are arguing that the fiduciary shield doctrine should apply. *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994). Not only is defendants' fiduciary shield argument perfunctory, undeveloped and thus waived, "[c]ourts in this district have consistently refused to apply the fiduciary shield doctrine to corporate presidents and CEOs." *Hundt v. DirectSat USA, LLC*, No. 08 C 7238, 2010 WL

1996590, at *7 (N.D. Ill. May 17, 2010) (Gottschall, J.)

In sum, despite defendants' arguments to the contrary, their contacts with Illinois were not "random, fortuitous, or attenuated." *Curry*, 949 F.3d at 396 (citing *Burger King*, 471 U.S. at 475). Accordingly, the Court denies defendants' Rule 12(b)(2) motions because the Court has personal jurisdiction over all of the defendants.

*Transfer Venue*

Next, defendants seek to transfer venue to the Southern District of New York under 28 U.S.C. § 1404(a). Because venue and jurisdiction are proper in both the Northern District of Illinois and the Southern District of New York, the Court will "evaluate both the convenience of the parties and various public-interest considerations." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018).

Factors that relate to the parties' private interests, also known as the convenience factors, include "the availability of and access to witnesses, and each party's access to and distance from resources in each forum." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010); *see also Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 868 (7th Cir. 2015). Other private factors include "the location of material events and the relative ease of access to sources of proof." *Research Automation*, 626 F.3d at 978.

The ease of access related to resources and witnesses, along with the location of material events, involve both New York and Illinois. Defendants reside in New York and Clearview has operations there. Defendants sold access to their database to numerous entities located in Illinois, including the Chicago Police Department, allegedly harming Illinois citizens. Under the circumstances, the above mentioned-convenience factors do not weigh in favor of either forum in light of modern electronic discovery practices, especially now during the COVID-19 pandemic where depositions and court hearings are done remotely via video and audio conferencing. *See In re*

6

*Hudson,* 710 F.3d 716, 719 (7th Cir. 2013) ("In our age of advanced electronic communication, including high-quality videoconferencing, changes of venue motivated by concerns with travel inconvenience should be fewer than in the past."). That said, courts in this district also consider the plaintiffs' choice of forum, especially if it is their home forum, when weighing convenience factors, which here favors the Northern District of Illinois. *See Nicks v. Koch Meat Co., Inc.,* 260 F.Supp.3d 942, 955 (N.D. Ill. 2017) (St. Eve, J.) (citing *In re Nat'l Presto Indus., Inc.,* 347 F.3d 662, 663–64 (7th Cir. 2003)).

Turning to the public interest considerations, the Court looks to the respective docket congestion, the Courts' familiarity with the relevant law, and the relationship of the community to the controversy. *Research Automation,* 626 F.3d at 978; *see also In re Ryze Claims Solutions, LLC,* ___ F.3d ___, 2020 WL 4432608, at *4 (7th Cir. Aug. 3, 2020). Looking to the March 31, 2020 Federal Court Management Statistic Report, the Southern District of New York is a little less congested than the Northern District of Illinois. Specifically, in the Southern District of New York, the time from filing a lawsuit until trial is 31.0 months and the time from filing to disposition 14.7 months. Whereas, in the Northern District of Illinois, the time from filing to trial is 39 months and the time from filing to disposition is 15 months. As such, this public interest factor slightly weighs in favor of transfer to the Southern District of New York.

Otherwise, the remaining public interest considerations strongly weigh in favor of the Northern District of Illinois. Illinois courts have much more familiarity with Illinois' BIPA statute than the Southern District of New York. And, Illinois courts, including its federal courts, have a strong interest in protecting the privacy rights of Illinois residents. Thus, after carefully considering and weighing the public and private interest factors, the Court, in its discretion, denies defendants' motion to transfer venue.

On a final note, defendants argue that there are several similar cases against it in the

7

Southern District of New York based on its facial recognition database; therefore, the present cases belong there. Yet, when plaintiff David Mutnick attempted to intervene in the Southern District of New York cases, the district court concluded that "the six New York cases and Mutnick's case, while all premised on the same underlying facts, raise different legal issues, have partially non-overlapping class definitions, and may require different discovery. All this undercuts Mutnick's claimed interest in seeing that they are all resolved in the same manner." *Calderon v. Clearview AI, Inc.*, 2020 WL 2792979, at *6 (S.D.N.Y. May 29, 2020). Defendants' argument is thus unavailing.

**Conclusion**

For these reasons, the Court denies defendants' Rule 12(b)(2) and § 1404(a) motions [29, 45].

**IT IS SO ORDERED.**

Date: 8/12/2020

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge