BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re: Clearview AI, Inc., Consumer Privacy | ) | |
| Litigation | ) | MDL Docket No. 2967 |
| | ) | |

**RESPONSE OF NORTHERN DISRICT OF ILLINOIS PLAINTIFFS AND PLAINTIFF
ROBERSON TO CLEARVIEW DEFENDANTS' MOTION TO TRANSFER AND
<u>COORDINATE OR CONSOLIDATE ACTIONS FOR PRETRIAL PROCEEDINGS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND .......................................................................................3

ARGUMENT ..............................................................................................................11

I.      Legal Standards.................................................................................................11

II.     The § 1407(a) Considerations Weigh in Favor of Transfer to the Northern District
        of Illinois. ......................................................................................................13

        A.      The Actions Involve One or More Common Questions of Fact. ...........................13

        B.      Transfer to the Northern District of Illinois Serves the Convenience of the
                Parties and Promotes the Just and Efficient Conduct of the Actions....................14

                1.      Illinois Is the Primary Locus of the Disputes.............................................14

                2.      The Northern District of Illinois Is the More Convenient Forum.............16

                3.      Transfer to the Northern District of Illinois Promotes the Just and
                        Efficient Conduct of the Actions. ...............................................17

CONCLUSION...........................................................................................................19

# TABLE OF AUTHORITIES

*Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617 (7th Cir. 2020) ...........................................14, 18

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)...................................................................5

*Curry v. Revolution Labs., L.L.C.*, 949 F.3d 385 (7th Cir. 2020)...................................................5

*McCollough v. Smarte Carte, Inc.*, No. 16 C 30777, 2016 WL 4077108 (N.D. Ill. 2016) ..........18

*Namuwonge v. Kronos, Inc.*, No. 1:19-cv-3239, 2019 WL 6253807 (N.D. Ill. 2019) ................18

*In re: Antibiotic Drugs*, 309 F.Supp. 155 (J.P.M.L. 1970).....................................................12, 13

*In re: Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*,
    804 F.Supp.2d 1376 (J.P.M.L. 2011)...................................................................................12

*In re: Crest Sensitivity Treatment & Protection Toothpaste Mkt'g and Sales Practices Litig.*,
    867 F.Supp.2d 1348 (J.P.M.L. 2012)........................................................................ 11, 12

*In re: Fairlife Milk Prod. & Sales Practices Litigation*, 396 F.Supp.3d (J.P.M.L. 2019)............18

*In re: Fluidmaster, Inc.*, 65 F.Supp.3d 1397 (J.P.M.L. 2014) ................................................15, 16

*In re: Helicopter Crash Near Wendle Creek, British Columbia, in Aug. 8, 2002*,
    542 F. Supp. 2d 1362 (J.P.M.L. 2008).........................................................................17, 18

*In re: Hudson*, 710 F.3d 716 (7th Cir. 2013) ........................................................................10, 17

*In re: McDonald's French Fries Litigation*, 444 F.Supp.2d 1342 (J.P.M.L. 2006).....................16

*In re: Time Warner Cable, Inc., Tel. Cons. Prot. Act (TCPA) Litig.*,
    247 F.3d 1388 (J.P.M.L. 2016)..............................................................................................13

*In re: U.S. Fin'l Sec. Litig.*, 375 F.Supp. 1403 (J.P.M.L. 1974)...................................................12

*In re: Zyprexa Prod. Liab. Litig.*, 314 F.Supp.2d 1380 (J.P.M.L. 2004).......................................12

## STATUTES AND OTHER AUTHORITIES

28 U.S.C. § 1407(a) ............................................................................................................. passim

*Manual for Complex Litigation*, (4th ed. 2016).......................................................................6, 12

## INTRODUCTION

Plaintiffs in the five Northern District of Illinois putative class actions pending before the Panel[1] (the "N.D. Ill. Plaintiffs") and one of the Southern District of New York putative class actions pending before the Panel[2] (collectively, the "Coalition Plaintiffs"): (a) submit this brief in support of coordination or consolidation of all related and tag-along actions (collectively, the "Related Actions") pursuant to 28 U.S.C. § 1407; and (b) respectfully request transfer of all actions to the Northern District of Illinois for consolidated proceedings before the Honorable Sharon Johnson Coleman. Of the twenty named plaintiffs in the eleven Related Actions, sixteen are Illinois residents seeking to enforce their rights and those of Illinois class members under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* The remaining plaintiffs are on opposite coasts – two from California, one from New York and one from Virginia. Relatedly, ten of the eleven cases assert claims under BIPA. None of the cases pending in the Southern District of New York allege any federal claims or specific violations of New York law.

Requiring 80% of the named plaintiffs – *i.e.*, those who are from Illinois – to litigate their Illinois claims in a New York federal court would undoubtedly greatly inconvenience them. In

[1] The N.D. Ill. Plaintiffs have harmoniously self-organized and agreed to a leadership structure, which Judge Coleman has adopted. Presently, four of the five actions are related before Judge Coleman, and three of those cases have been consolidated with *Mutnick v. Clearview AI, Inc.* ("*Mutnick*"), No. 1:20-cv-512 (N.D. Ill.) (filed Jan. 22, 2020). The plaintiffs in the fourth related case have agreed to consolidation in the event their pending motion to remand is denied. While a stay order has precluded the relation, reassignment and consolidation of the fifth case, plaintiff and plaintiff's counsel in that case have agreed to those actions. Moreover, plaintiff's counsel in that case has filed a Notice of Potential Tag-Along Action/Related Action. *See* J.P.M.L. Dkt. 21. The four other actions are: *Hall v. Clearview AI, Inc.* ("*Hall*"), No. 1:20-cv-846 (N.D. Ill.) (consolidated); *Marron v. Clearview AI, Inc.* ("*Marron*"), No. 1:20-cv-2989 (N.D. Ill.) (consolidated); *Thornley v. Clearview AI, Inc.* ("*Thornley*"), No. 1:20-cv-3843 (N.D. Ill.) (related); and *Carmean v. Macy's Retail Holdings, Inc.* ("*Carmean*"), No. 1:20-cv-4589 (N.D. Ill.) (Aspen, J.) (collectively the "N.D. Ill. Actions"). Counsel in *Hall* and *Carmean* are the same.
[2] The plaintiff in *Roberson v. Clearview AI, Inc.*, No. 1:20-cv-3705-CM (S.D.N.Y.) ("*Roberson*") joins in this submission. *Roberson* originally was filed in the Eastern District of Virginia.

1

contrast, with most of the plaintiffs residing in Illinois and the others on opposite coasts, centralizing these cases in the Northern District of Illinois' geographically central location provides the greatest amount of convenience for all parties.

Additionally, the N.D. Ill. Actions have progressed much further than the six actions pending in the Southern District of New York (the "New York Actions"). A fully briefed motion for preliminary injunction is currently pending against Defendants Clearview AI, Inc. ("Clearview"); Hoan Ton-That and Richard Schwartz (collectively, the "Clearview Defendants") in the N.D. Ill. Actions. Judge Coleman has indicated that she has begun reviewing the motion's merits and appears to be close to issuing a ruling, having requested that the N.D. Ill. Plaintiffs submit a proposed order.

Further, Judge Coleman has issued a detailed opinion denying the Clearview Defendants' motion to dismiss for lack of personal jurisdiction or, alternatively, motion to transfer venue to the Southern District of New York (the "Motion to Dismiss/Transfer"). In the opinion, Judge Coleman highlighted the Clearview Defendants' many connections and contacts with Illinois and rejected many of the same arguments the Clearview Defendants now present to the Panel.

Judge Coleman has also systematically organized the N.D. Ill. Actions. As discussed above, Judge Coleman has related and consolidated the actions where appropriate. Moreover, she has appointed interim lead class counsel and ordered the filing of a consolidated complaint and answer. With Judge Coleman actively moving the N.D. Ill. Actions forward, the Clearview Defendants filed the present motion and a concurrent motion to stay the N.D. Ill. Actions.

In contrast to the progress of the N.D. Ill. Actions, the New York Actions have stagnated. Beyond the plaintiffs filing their complaints and the Clearview Defendants seeking to delay their answers, the parties have taken virtually no action.

2

Based on the above-described facts, the Northern District of Illinois is the most appropriate transferee forum. Illinois is the common thread running through all of the cases, save one, and the plaintiff in the outlier case favors transfer to the Northern District of Illinois. Beyond being central to the legal and factual issues, Illinois is geographically central. Moreover, as discussed below, all of the Defendants do business in Illinois and some of them are located here. As such, no Defendant can credibly claim inconvenience by having to litigate in Illinois. Thus, centralization and coordination in the Northern District of Illinois best further § 1407(a)'s dual objectives of promoting convenience and the just and efficient conduct of the actions.

## FACTUAL BACKGROUND

### *The Clearview Defendants' Biometric Database*

The Clearview Defendants created a biometric database (the "Biometric Database") containing images and biometric data of over three billion people. The Clearview Defendants obtained the images and biometric data by scraping photographs from the internet and then performing scans of the facial geometry of each face appearing in each image. After collecting and obtaining the images' biometric data, the Clearview Defendants sold and distributed the data to public and private entities in order generate profits.

The Clearview Defendants marketed the Biometric Database as a product that could help public and private entities identify unknown individuals merely by uploading images to the database. According to the Clearview Defendants: (a) a user of the Biometric Database could upload an image to the database to learn the identity of the person in the image; (b) the Clearview Defendants and the database would then perform a biometric scan of that image to determine if it matched any images in the database; and, if so, (c) the Clearview Defendants would inform the user of the match and provide the identity of the unknown person in the image.

3

*The Defendants*

   *The Clearview Defendants*

   In denying the Clearview Defendants' Motion to Dismiss/Transfer, Judge Coleman found that the Clearview Defendants were subject to jurisdiction in Illinois and made the following findings based on the parties' evidence, allegations and averments (*see* Exhibit 1 (Order)):

   Defendants Ton-That and Schwartz founded Defendant Clearview in 2017. *Id.* at 3.[3] Ton-That is Clearview's CEO, responsible for managing Clearview's technological matters. *Id.* Schwartz is Clearview's president, responsible for managing Clearview's sales. *Id.* at 3-4.

   Ton-That and Schwartz have executed hundreds of agreements with public and private Illinois entities on Clearview's behalf, including agreements with the Illinois Secretary of State, Chicago Police Department, the Rockford Police Department and the Naperville Police Department. *Id.* at 4. Through the agreements, the Clearview Defendants provide the public and private entities with access to the Biometric Database. *Id.* The Clearview Defendants directed the Illinois Secretary of State to make payments to Schwartz's residence. *Id.*

   Images in the Biometric Database were uploaded and created from Illinois-based websites and internet platforms or companies who operate servers in Illinois. *Id.* "Simply put, defendants took biometric information from Illinois residents, created a surveillance database, and then marketed and sold licenses to this database to entities in Illinois." *Id.*

   While the Clearview Defendants submitted declarations claiming a lack of connection to Illinois, Judge Coleman found that "Defendants' argument is untenable for several reasons . . . ." *Id.* at 4-5. Specifically, she found that the sworn declarations conflicted with the evidence,

---

[3] Page number references for docketed filings are to the ECF page numbers. Further, references to "Dkt." are to the docket in *Mutnick*, a copy of which is attached hereto as Exhibit 2.

allegations and averments in the case and resolved the conflict in favor of the N.D. Ill. Plaintiffs. *Id.*, *citing Curry v. Revolution Labs., L.L.C.*, 949 F.3d 385, 393 (7th Cir. 2020). Notably, the Clearview Defendants have presented those same defective sworn declarations in connection with their present motion. *See* J.P.M.L. Dkt. 1-3, 1-4. Further, Judge Coleman found that the Clearview Defendants' physical presence in Illinois was not necessary for them to have conducted business in Illinois. Ex. 1 at 5, *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

### The Other Defendants

In addition to the Clearview Defendants, one action names Macy's Retail Holdings, Inc. ("Macy's") as a defendant (*see Carmean* Dkt. 8), and one action names Wynndalco Enterprises, LLC ("Wynndalco") and its principles as defendants (*see Calderon* Dkt. 52). Macy's operates retail stores in Illinois and used the Biometric Database. *Carmean* Dkt. 8 ¶¶ 3-4, 10. Wynndalco and its principles are Illinois residents and provided the Biometric Database to the Chicago Police Department. *Calderon* Dkt. 52 ¶¶ 7, 15 (amended complaint); *Calderon* Dkt. 53-58 (summonses).

## The Various Actions

### The N.D. Ill. Actions

The N.D. Ill. Plaintiffs are Illinois residents who have commenced five separate class actions arising from the Clearview Defendants' alleged unlawful conduct in collecting, capturing, obtaining, distributing and profiting off of the plaintiffs' and class members' biometric data. Each complaint alleges BIPA violations on behalf of an Illinois class of residents. Additionally, in the broadest-based complaint of any of the Related Actions, *Mutnick* alleges multiple constitutional violations and a common law unjust enrichment claim on behalf of a nationwide class. The plaintiffs in *Hall* and *Carmean* also allege Illinois consumer fraud claims.

5

The N.D. Ill. Plaintiffs have self-organized, as encouraged by the *Manual for Complex Litigation*. *See Manual for Complex Litigation*, §§ 10.22, 21.272. This cooperation has resulted in the appointment of Scott R. Drury ("Drury") and Mike Kanovitz ("Kanovitz") of Loevy & Loevy, counsel in *Mutnick*, as interim lead class counsel for the N.D. Ill. Actions. Ex. 2 at Dkt. 90.

Plaintiff Mutnick was the first to file a complaint against the Clearview Defendants, and the case was assigned to the Honorable Sharon Johnson Coleman. *Id.* at Dkt. 1. To ease the burden on the Court, as additional Clearview-related matters were filed, Plaintiff Mutnick moved to relate them. *See id.* at Dkt. 40, 71, 77. Judge Coleman has granted those motions and related *Hall*, *Marron* and *Thornley*.[4] *Id.* at Dkt. 61, 72, 77. Judge Coleman has also consolidated *Hall* and *Marron* with *Mutnick* at Plaintiff Mutnick's request. *Id.* at Dkt. 82, 87. Because counsel in *Thornley* have moved to remand their matter, Plaintiff Mutnick withdrew his request to consolidate *Thornley*. *See id.* at Dkt. 82, 85. The *Thornley* plaintiffs have agreed to consolidation in the event their matter is not remanded. *See id.* Similarly, while the *Thornley* plaintiffs have joined in the submission of this brief, they continue to maintain that their action should be remanded and, therefore, not be part of any consolidated matter.

At the time Judge Coleman ordered consolidation, she also ordered the N.D. Ill. Plaintiffs to file a consolidated complaint by August 31, 2020 and the Clearview Defendants to answer by September 14, 2020. *See id.* at Dkt. 87. Before the N.D. Ill. Plaintiffs could file their consolidated complaint, the Clearview Defendants filed the present motion and a concurrent motion to stay the N.D. Ill. Actions, which the court granted. *Id.* at Dkt. 92, 97. The N.D. Ill. Plaintiffs have sought reconsideration of that stay order. *Id.* at Dkt. 100.

---

[4] *Carmean* has not yet been related, reassigned or consolidated because it was later filed and a stay order now prevents a motion to relate, reassign and consolidate *Carmean*.

6

Beyond the above-described procedural progress, Plaintiff Mutnick has also filed a motion for preliminary injunction, which the parties have fully briefed. *Id.* at Dkt. 30-33, 56, 63-65, 68. On two occasions, Judge Coleman has indicated that she has begun reviewing the merits of the motion, and on August 14, 2020, the court requested that Drury submit a proposed order for the preliminary injunction, which he did. *See id.* at Dkt. 61 at 3; Dkt. 100-1 at 2.

The progress of the N.D. Ill. Actions is quite remarkable given the Clearview Defendants' repeated attempts to delay progress. Almost every time the N.D. Ill. Plaintiffs sought to advance the actions, the Clearview Defendants sought delay. When Plaintiff Mutnick moved for a preliminary injunction, the Clearview Defendants sought a stay. *Id.* at Dkt. 47. When Plaintiff Mutnick moved for consolidation, the Clearview Defendants responded that consolidation should not be addressed until their Motion to Dismiss/Transfer was decided – *i.e.*, they sought a *de facto* stay. *Id.* at Dkt. 84. In response to the ordering of a consolidated complaint and answer thereto, as well as a proposed order on the preliminary injunction motion, the Clearview Defendants filed the present motion and, again, sought a stay. *Id.* at Dkt. 92, 97.

### *The New York Actions*

In sharp contrast to the N.D. Ill. Actions, the New York Actions have stagnated.[5] Beyond the plaintiffs filing their complaints and the Clearview Defendants seeking to delay filing any answers, the parties have taken virtually no action. The parties have not self-organized, have not submitted leadership applications[6] and have not pursued any relief on behalf of any class members.

---

[5] The six New York Actions are: (a) *Calderon v. Clearview AI, Inc.* ("*Calderon*"), No. 1:20-cv-1296-CM (S.D.N.Y.); (b) *Broccolino v. Clearview AI, Inc.* ("*Broccolino*"), No. 1:20-cv-2222-CM (S.D.N.Y.); (c) *McPherson v. Clearview AI, Inc.* ("*McPherson*"), No. 1:20-cv-3053-CM (S.D.N.Y.); (d) *Burke v. Clearview AI, Inc.* ("*Burke*"), No. 1:20-cv-3104-CM; (e) *John v. Clearview AI, Inc.* ("*John*"), No. 1:20-cv-3481-CM (S.D.N.Y.); and (f) *Roberson*.

[6] Early in the case, plaintiffs' counsel in *Calderon* sought appointment as interim lead counsel. *Calderon* Dkt. 17. Chief Judge McMahon declined to take action on the motion because, as

Of the six New York Actions, all but *Roberson* have an Illinois plaintiff and allege BIPA violations. *Roberson* is part of the coalition submitting this brief. Two of the actions (*Burke* and *McPherson*) have the same counsel. Of the twelve named New York Action plaintiffs, eight are from Illinois. The remaining four plaintiffs reside on opposite coasts: two are from California, one is from New York and one is from Virginia.

As in the N.D. Ill. Actions, the New York Actions alleging BIPA violations are brought on behalf of a putative class of Illinois residents. The plaintiffs in *Burke* and *John* also assert California state law claims on behalf of a putative California subclass. As in *Mutnick*, the plaintiffs in *John* also assert an unjust enrichment claim on behalf of a putative nationwide class. The plaintiff in *Roberson* asserts violations of Virginia law on behalf of a putative Virginia class. None of the New York Actions assert federal claims or specific violations of New York law.

**Efforts to Coordinate the Cases**

### The Motion to Intervene

On April 15, 2020, Chief Judge McMahon entered a Directive in which she questioned why the New York Actions (there were two at the time) were pending in the Southern District of New York:

> It is not at all clear to me that these cases belong in this court. They arise under an Illinois statute [BIPA]. They are brought on behalf of a class of persons who, while residing in the State of Illinois, had certain "biometrics" . . . "scraped" by Defendants and used without their consent in violation of the Illinois statute. While it is possible that some members of the putative class no longer reside in Illinois, it is beyond cavil that the Illinois statute applied only to Illinois residents and that the vast majority of class members presently reside in the state.

---

discussed below, it was not clear to her at that time that the cases belonged in the Southern District of New York. *Calderon* Dkt. 21 at 1.

*Calderon* Dkt. 21 at 1-2. Prompted by that Directive, Plaintiff Mutnick moved to intervene in the New York Actions and to dismiss, stay or transfer those cases to the Northern District of Illinois. *Calderon* Dkt. 22.

Chief Judge McMahon denied the motion to intervene and, therefore, did not reach the merits of the motion to transfer. *Calderon* Dkt. 51 at 15, 17-18. Chief Judge McMahon found that the New York Actions and Plaintiff Mutnick's case "raise different legal issues, have partially non-overlapping class definitions, and may require different discovery." *Id.* at 12. According to the court, the differences undercut any claimed interest in seeing that the actions were resolved in the same manner. *See id.* Relatedly, the court rejected concerns regarding the potential for conflicting interpretations of legal issues, finding that "[i]dentical issues of law arise in pending cases all the time. Sometimes they give rise to conflicting interpretations of law . . . ." *Id.* at 13.

While Chief Judge McMahon did not reach the merits of Plaintiff Mutnick's transfer motion, in *dicta* she noted that circumstances had changed since the issuance of the Directive, namely: (a) four additional actions had been filed or transferred to the Southern District of New York; (b) the new actions asserted claims under laws of various states; and (c) a question existed as to whether the Northern District of Illinois had personal jurisdiction over the Clearview Defendants. *Id.* at 15, 17-18. The court further observed that *Roberson* had been transferred from the Eastern District of Virginia after the judge there determined that the Southern District of New York was a more appropriate forum. *Id.* at 17-18. The court also noted in *dicta* that "[b]y all indications, New York is the primary locus of the disputes," pointing to the physical location of the Clearview Defendants and their records and the then unresolved question of the Northern District of Illinois' jurisdiction over those Defendants. *Id.* at 15.

9

### The Clearview Defendants' Motion to Transfer

As discussed above, this is not the Clearview Defendants' first attempt to transfer this case. They already have tried and failed before Judge Coleman. *See* Ex. 1. In refusing to transfer the N.D. Ill. Actions, Judge Coleman found that multiple factors favored or strongly favored venue in the Northern District of Illinois. *Id.* at 7. For instance, Judge Coleman found that "***Illinois courts have much more familiarity with Illinois' BIPA statute than the Southern District of New York. And Illinois courts, including its federal courts, have a strong interest in protecting the privacy rights of Illinois residents***." *Id.* (emphasis added). Further, she found that the N.D. Ill. Plaintiffs' choice of their home forum weighed in favor of the Northern District of Illinois. *Id.*

Judge Coleman found that other factors were neutral or only slightly favored the Southern District of New York. *Id.* at 6-7. Specifically, she found the "convenience factors" to be neutral "in light of modern discovery practices, especially now during the COVID-19 pandemic where depositions and court hearings are done remotely via video and audio conferencing." *Id.*, *citing In re: Hudson*, 710 F.3d 716, 719 (7th Cir. 2013). Further, she found that court congestion only slightly favored the Southern District of New York, noting that the time from filing to disposition in the Northern District of Illinois and the Southern District of New York was 15 months and 14.7 months, respectively. *Id.* at 7. She further noted that the time from filing to trial was 39 months and 31 months, respectively. *Id.* Judge Coleman's analysis did not consider the Southern District of New York's more congested MDL docket.[7]

Finally, quoting Judge McMahon, Judge Coleman rejected the contention that the N.D. Ill. Actions should be transferred to the Southern District of New York because similar cases were

---

[7]*See* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-August-17-2020.pdf.

pending there. Ex. 1 at 7-8. Judge Coleman specifically pointed to the fact that the cases "'raise different legal issues, have partially non-overlapping class definitions, and may require different discovery.'" *Id.* at 8, *quoting Calderon* Dkt. 51 at 12.

### The N.D. Ill. Plaintiffs Convene the Parties to Discuss Alternatives to Consolidation

Recognizing that two federal judges found substantive differences in the N.D. Ill. and New York Actions and that only two districts are involved in this motion to transfer, Drury, on behalf of the N.D. Ill. Plaintiffs, convened a conference call with all parties to discuss informal alternatives to consolidation. Exhibit 3 (email). Each plaintiff and defendant was represented during the call.[8] During the call, Drury queried whether informal cooperation among the parties would be preferable to consolidation. Specifically, Drury queried whether the parties could eliminate duplicative discovery by agreeing that deposition notices could be filed in all related cases and that discovery relevant to more than one action could be used in each such action. *See In re: Crest Sensitivity Treatment & Protection Toothpaste Mkt'g and Sales Practices Litig.*, 867 F.Supp.2d 1348 (J.P.M.L. 2012) ("*Crest Litig.*"). During the call, concerns were raised regarding class certification and inconsistent decisions on substantive motions in the absence of centralization. The parties did not agree to informal alternatives to consolidation.

### ARGUMENT

## I.    Legal Standards.

Pursuant to 28 U.S.C. § 1407(a), "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district . . . upon [the Panel's] determination that transfers for such proceedings will be for the convenience

---

[8] Macy's was not included in the call because the Notice of Tag-Along Action/Related Action had not yet been filed. *See* J.P.M.L. Dkt. 21.

of the parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a); *see also Manual for Complex Litigation*, § 20.131 (4th ed. 2016). "[T]he prevalence of common factual issues and similar class allegations necessitates transfer of all actions to a single district for coordinated or consolidated pretrial proceedings under Section 1407 in order to prevent duplication of discovery and eliminate the possibility of inconsistent or overlapping class determinations." *In re: U.S. Fin'l Sec. Litig.*, 375 F.Supp. 1403, 1404 (J.P.M.L. 1974). As set forth in the *Manual for Complex Litigation*, in selecting a transferee forum, the panel should consider "the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." *Manual for Complex Litigation*, § 20.131 (4th ed. 2016).

Transfer under § 1407 does not require a "complete identity or even majority of common factual issues . . . ." *In re: Zyprexa Prod. Liab. Litig.*, 314 F.Supp.2d 1380, 1381 (J.P.M.L. 2004). Similarly, "the applicability of different legal principles will not prevent the transfer of an action under section 1407 if the requisite common questions of fact exist." *In re: Antibiotic Drugs*, 309 F.Supp. 155, 156 (J.P.M.L. 1970).

 Before seeking transfer, parties should first consider all other options. *See In re: Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F.Supp.2d 1376, 1378 (J.P.M.L. 2011) ("*Best Buy Litig.*"). Alternatives to be considered include informal efforts among counsel to coordinate written and oral discovery. *See Crest Litig.*, 867 F.Supp.2d at 1348. Where a transfer request involves a limited number of cases and informal coordination opportunities exist, transfer may be denied. *See Best Buy Litig.*, 804 F.Supp.2d at 1378 (denying transfer); *Crest Litig.*, 867 F.Supp.2d at 1348 (denying transfer). Further, where cases present different legal issues, involve non-overlapping classes and may require different discovery, the claimed interest in resolving the

cases in the same manner is undercut. *See In re: Time Warner Cable, Inc., Tel. Cons. Prot. Act (TCPA) Litig.*, 247 F.3d 1388 (J.P.M.L. 2016).

## II.   The § 1407(a) Considerations Weigh in Favor of Transfer to the Northern District of Illinois.

### A.   The Actions Involve One or More Common Questions of Fact.

The N.D. Ill. Actions and the New York Actions share common questions of fact, thereby satisfying the threshold transfer factor under § 1407(a). At base, the various actions arise out of the Clearview Defendants' alleged unlawful conduct in collecting, capturing, obtaining, distributing and profiting off of citizens' biometric data. Moreover, the actions share common legal questions. Except for *Roberson*, all of the cases allege violations of Illinois' Biometric Information Privacy Act on behalf of overlapping Illinois classes. Further, *Mutnick* and *John* allege overlapping nationwide classes. These mostly Illinois-based commonalities weigh in favor of transfer to and consolidation in the Northern District of Illinois. This conclusion is not impacted by the fact that the parties have asserted varying legal claims based on the common factual questions. *See In re: Antibiotic Drugs*, 309 F.Supp. at 156.

Recognizing that transfer under § 1407(a) is the exception, not the rule, the N.D. Ill. Plaintiffs have explored alternatives to transfer. Based on Chief Judge McMahon's initial indication that all of the cases may belong in Illinois, Plaintiff Mutnick sought to intervene in the New York Actions and have them transferred to Illinois. Further, the N.D. Ill. Plaintiffs convened all of the parties to explore the possibility of informal coordination, to no avail. Relatedly, the Clearview Defendants sought to transfer the N.D. Ill. Actions to the Southern District of New York, an effort that Judge Coleman soundly rejected. *See* Ex. 1.

The Coalition Plaintiffs recognize that two federal courts have found that differences in the cases – *i.e.*, different legal issues, non-overlapping classes and different discovery – undercut the

interest in the cases being resolved in the same manner. Ex. 2 at Dkt. 86 at 8; *Calderon* Dkt. 51 at 12. The Coalition. Plaintiffs do not dispute those findings but respectfully submit that the commonalities among the cases and the potential for disparate rulings favor transfer under § 1407.

**B.  Transfer to the Northern District of Illinois Serves the Convenience of the Parties and Promotes the Just and Efficient Conduct of the Actions.**

Contrary to the Clearview Defendants' contention, the factors for selecting a transferee forum strongly weigh in favor of the Northern District of Illinois.

**1.  Illinois Is the Primary Locus of the Disputes.**

The facts make clear that the primary locus of the disputes is Illinois and that the Northern District of Illinois possesses the strongest connection to this litigation. The common thread linking all but one of the cases together is Illinois' BIPA statute. And the plaintiff in the outlier case ("*Roberson*") favors transfer to the Northern District of Illinois. Notably, the BIPA violations and resulting injuries occurred in Illinois – the place where the Clearview Defendants failed to provide all Illinois plaintiffs and class members with the requisite notice under BIPA and deprived them of the opportunity to give the requisite consent to use their biometric data. *See Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 624-25 (7th Cir. 2020) (concrete harm from failure to provide Illinois plaintiff with requisite information in Illinois)

Moreover, 80% of the named plaintiffs call Illinois their home, and each Defendant is subject to jurisdiction in Illinois. Also, Plaintiff Mutnick, an Illinois resident and the filer of the first complaint against the Clearview Defendants, filed his complaint in the Northern District of Illinois. Importantly, his complaint is the broadest in nature of any of the complaints, asserting

multiple federal constitutional violations on behalf of a nationwide class, in addition to state and common law claims.[9] *See In re: Fluidmaster, Inc.*, 65 F.Supp.3d 1397, 1398 (J.P.M.L. 2014).

While Chief Judge McMahon observed in *dicta* that transfer to the Northern District of Illinois may not be appropriate and that "[b]y all indications, New York is the primary locus of the disputes," *Calderon* Dkt. 51 at 15, she did not have the benefit of the more fully developed facts presented to Judge Coleman and now presented to the Panel. At the time Chief Judge McMahon issued her order, six New York Actions were pending, as opposed to only two N.D. Ill. Actions. There now are five N.D. Ill. Actions and a vast majority of all: (a) named plaintiffs are from Illinois; and (b) filed cases allege BIPA violations. Further, with *Roberson* being part of the coalition seeking transfer to the Northern District of Illinois, plaintiffs in six of the eleven cases favor transfer to that District.

Moreover, at the time of Chief Judge McMahon's opinion, a question existed regarding the Northern District of Illinois' jurisdiction over the Clearview Defendants. That question has now been resolved against the Clearview Defendants. In connection with that resolution, Judge Coleman found that the Clearview Defendants have many more ties to Illinois than they indicated in their declarations. Notably, whereas Judge Coleman had to consider the Clearview Defendants' connections to Illinois in order to rule on the Motion to Dismiss/Transfer, Chief Judge McMahon did not have to do the same because she never reached the merits of Plaintiff Mutnick's transfer motion. *See Calderon* Dkt. 51 at 17.

---

[9] The Clearview Defendants incorrectly contend that *John* is the broadest complaint because it asserts claims under California, New York and Illinois law. *See* J.P.M.L. Dkt. 1-1 at 18. *John* does not allege any specific violations of New York law. Moreover, its discrete state law claims are not broader or more diverse than *Mutnick*'s nationwide federal constitutional claims.

Finally, while Chief Judge Coleman correctly pointed out that *Roberson* had been transferred to the Southern District of New York, the judge ordering the transfer was not presented with any of the facts favoring transfer to the Northern District of Illinois. The only districts involved in the transfer motion were the Eastern District of Virginia and the Southern District of New York. *Roberson* Dkt. 24. Finally, the Coalition Plaintiffs note that none of the New York Actions assert any federal claims or specific violations of New York law. In short, other than the Clearview Defendants' self-serving desire to litigate these cases in New York, they have no viable or objective basis for seeking transfer to the Southern District of New York.

## 2.     The Northern District of Illinois Is the More Convenient Forum.

With a vast majority of the named plaintiffs residing in Illinois, the other plaintiffs dispersed on opposite coasts, and putative class members dispersed throughout the country, the Northern District of Illinois' geographically central location makes it the more convenient and accessible forum. *In re: Fluidmaster, Inc.*, 65 F.Supp.3d at 1398 (observing the Northern District of Illinois "offers a geographically accessible forum for this nationwide litigation"); *In re: McDonald's French Fries Litigation*, 444 F.Supp.2d 1342, 1343 (J.P.M.L. 2006) ("given the geographic dispersal of the constituent actions, the Northern District of Illinois offers a relatively geographically central and accessible forum for this litigation."). This conclusion is underscored by the fact that: (a) five of the actions are pending in the Northern District of Illinois, and *Roberson*'s counsel has joined the coalition seeking transfer to that District; (b) the Wynndalco Defendants are based in Illinois, and the other Defendants regularly do business in Illinois; and (c) the Northern District of Illinois is in close proximity to two major airports.

None of the Clearview Defendants' convenience arguments change the above-stated conclusion. Their arguments largely center on the physical location of Clearview officers,

employees and documents. *See* J.P.M.L. Dkt. 1-1 at 16. Those arguments ignore the realities of modern-day discovery, especially since the COVID-19 pandemic, where hearings and depositions are routinely conducted via video or audio. *See In re: Hudson*, 710 F.3d at 719. Similarly, in modern times, documents are routinely exchanged electronically, and a technology company like Clearview cannot credibly contend that its "documents" only exist in paper form.

   **3.**  **Transfer to the Northern District of Illinois Promotes the Just and Efficient Conduct of the Actions.**

  For multiple reasons, transfer to the Northern District of Illinois promotes the just and efficient conduct of the actions. First, the N.D. Ill. Actions are more advanced than the New York Actions, and transfer to New York will, thus, waste resources. The N.D. Ill. Actions are organized and consolidated and a fully-briefed motion for preliminary injunction is pending. It appears that Judge Coleman has begun reviewing the merits of that motion and appears to be close to ruling on it. Transferring the N.D. Ill. Actions to New York would result in a waste of those efforts and require a different judge to take up the issue anew. *See In re: Helicopter Crash Near Wendle Creek, British Columbia, in Aug. 8, 2002*, 542 F. Supp. 2d 1362, 1363 (J.P.M.L. 2008) ("the transferee judge has developed a familiarity with the allegations, uses, parties and counsel involved in this docket, which will further the expeditious resolution of the litigation taken as a whole.").

  Second, ten of the eleven actions are brought on behalf of *Illinois* plaintiffs seeking to enforce an *Illinois* statute for violations of their privacy rights in *Illinois*, and the only case not involving an Illinois plaintiff (*Roberson*) favors transfer to the Northern District of Illinois. Judge Coleman has found that Illinois' interest in deciding BIPA cases far outweighs that of the Southern District of New York: "Illinois courts have much more familiarity with Illinois' BIPA statute than the Southern District of New York. And Illinois courts, including its federal courts have a strong interest in protecting the privacy rights of Illinois residents." Ex. 1 at 7. Relatedly, BIPA legal

17

issues are well-developed in the Seventh Circuit, as most recently evidenced by its opinion in *Bryant*, *supra.* In sharp contrast, it appears the Southern District of New York and the Second Circuit have presided over a total of two BIPA cases, as the Clearview Defendants concede. *See* J.P.M.L. Dkt. 1-1 at 18, n.6. In short, no judicial district is more qualified to oversee this BIPA-centered litigation than the Northern District of Illinois

As for the non-BIPA claims, Judge Coleman, like other federal judges, will be able to skillfully address those claims. The Clearview Defendants highlighted this general proposition in their brief. *See id.*

Third, Judge Coleman has personally presided over BIPA class actions. *See McCollough v. Smarte Carte, Inc.*, No. 16 C 3777, 2016 WL 4077108 (N.D. Ill. 2016); *Namuwonge v. Kronos, Inc.*, No. 1:19-cv-3239, 2019 WL 6253807 (N.D. Ill. 2019). This weighs in favor of transfer to the Northern District of Illinois. *See In re: Helicopter Crash Near Wendle Creek, British Columbia, in Aug. 8, 2002*, 542 F. Supp. 2d at 1363, *supra.*

Fourth, Judge Coleman is an experienced jurist who is more than qualified to "steer this litigation on an efficient and prudent course." *In re: Fairlife Milk Prod. & Sales Practices Litigation*, 396 F.Supp.3d at 1371. Indeed, her systematic advancement of the N.D. Ill. Actions is demonstrative of the way she can be expected to move the consolidated matter forward. Judge Coleman has presided over numerous complex class actions throughout her judicial career. *See, e.g.*, *Remijas v. Neiman Marcus Group, LLC*, No. 14-cv-1735 (N.D. Ill.); *Chapman v. First Index, Inc.*, No. 09 C 5555 (N.D. Ill.); *McCue v. MB Financial, Inc.*, No. 15 cv 988 (N.D. Ill.); *Page v. Alliant Credit Union*, No. 1:19-cv-5965 (N.D. Ill.); *Washtenaw Cnty. Employees' Retirement Sys. v. Walgreen Co.*, No. 15-cv-3187 (N.D. Ill.); *Eubank v. Pella Corp.*, No. 06-cv-4486 (N.D. Ill.). Judge Coleman has also presided over non-class-action cases that involved many consolidated

18

actions. *See, e.g.*, *Palomares v. Second Fed. Sav. And Loan Ass'n of Chicago*, No. 10-cv-6124 (N.D. Ill.) (consolidated civil rights action).

While the Clearview Defendants point to docket congestion as a factor that favors the Southern District of New York, at best, that factor is neutral and does not offset the reasons for transferring the New York Actions to the Northern District of Illinois. As set forth above, the Southern District of New York's docket is more congested with pending MDL matters than the Northern District of Illinois' docket. Further the time from filing to disposition of cases in the Southern District of New York and the Northern District of Illinois is almost identical. While the time from filing to trial is slightly longer in the Northern District of Illinois, it is the rare class action that makes it to trial. To the extent these cases are tried, the slight difference in time to trial, in the overall context of a class action, is negligible.

## CONCLUSION

For the foregoing reasons, the Coalition Plaintiffs respectfully request that the Panel transfer the New York Actions to the Northern District of Illinois for coordinated pretrial proceedings before the Honorable Sharon Johnson Coleman.

Dated: September 8, 2020        Respectfully submitted,

**LOEVY & LOEVY**

/s/ Scott R. Drury
Scott R. Drury (drury@loevy.com)
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
312.243.5900 (phone)
312.243.5902 (fax)
***Plaintiff's Counsel in Mutnick v. Clearview AI, Inc.,***
***No. 1-20-cv-512 (N.D. Ill.)***

Michael William Drew (mwd@neighborhood-legal.com)
**NEIGHBORHOOD LEGAL, LLC.**
20 N. Clark, Ste. 3300
Chicago, IL 60602
(312) 967-7220
***Plaintiff's Counsel in Hall v. Clearview AI, Inc.,***
***No. 1:20-cv-846 (N.D. Ill.) and Carmean v. Macy's Retail***
***Holdings, Inc., No. 1:20-cv-4589 (N.D. Ill.)***

Gary Lynch (glycnh@carlsonlynch.com)
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412)-322-9243
***Plaintiffs' Counsel in Marron v. Clearview AI, Inc.,***
***No. 1:20-cv-2989 (N.D. Ill.)***

Brian Patrick O'Meara (bomeara@fordellp.com)
**FORDE & O'MEARA LLP**
111 West Washington Street, #1100
Chicago, IL 60602
(312) 641-1441
***Plaintiffs' Counsel in Thornley v. Clearview AI, Inc.,***
***No. 1:20-cv-3843***

Steven T. Webster (swebster@websterbook.com)
**WEBSTER BOOK LLP**
300 N. Washington Street, Suite 204
Alexandria, VA 22314
(888) 987-9991
***Plaintiff's Counsel in Roberson v. Clearview AI, Inc.,***
***No. 1:20-cv-3705-CM***